1   WALLACE M. TICE, ESQ. (SBN 88177)
    RANDEL J. CAMPBELL, ESQ. (SBN 209324)
2   LYNCH, GILARDI & GRUMMER
    A Professional Corporation
3   475 Sansome Street, Suite 1800
    San Francisco, CA 94111
4   RCampbell@lgglaw.com
    Telephone:    (415) 397-2800
5   Facsimile:    (415) 397-0937

6

7   Attorneys for Plaintiff
    EAGLE NORTH AMERICA, INC.

8

9                UNITED STATES DISTRICT COURT

10      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

11

12  EAGLE NORTH AMERICA, INC., a South      Case No.
    Carolina corporation,
13                                          COMPLAINT FOR DAMAGES:
                 Plaintiff(s),              1.    BREACH OF CONTRACT;
14                                          2.    QUANTUM MERUIT;
         vs.                                3.    INDEBITATUS ASSUMPSIT
15
    GENESIS FLUID SOLUTIONS, LTD., a        DEMAND FOR JURY TRIAL
16  Colorado corporation; MICHAEL K.
    HODGES, an individual,
17                                          Case Filed:
                 Defendant(s).              Trial Date:
18

19

20

21      COMES NOW Plaintiff EAGLE NORTH AMERICA, INC, and alleges as follows:

22                              PARTIES

23      1.    Plaintiff EAGLE NORTH AMERICA, INC. is a South Carolina corporation with

    its principal place of business in Evans, Georgia.

24      2.    Defendant GENESIS FLUID SOLUTIONS, LTD. is a Colorado corporation with

25  its principal place of business in Colorado Springs, Colorado.

26      3.    Defendant MICHAEL K. HODGES is an individual who resides in and is a citizen

27  of Colorado Springs, Colorado.

28

Lynch, Gilardi
& Grummer
A Professional
Corporation
475 Sansome Street
Suite 1800
San Francisco, CA
94111
Ph (415) 397-2800
Fax (415) 397-0937

                              1
                                        COMPLAINT FOR DAMAGES

## JURISDICTION

4.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs above as through fully set forth herein.

5.    Jurisdiction is proper in the United States District Court under 28 U.S.C. 1332, because the parties are citizens of different states, and the amount in controversy exceeds $75,000.

## VENUE

6.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs above as through fully set forth herein.

7.    Venue is proper in the Northern District of California, San Jose Division pursuant to 28 U.S.C. 1391, because the events or omissions giving rise to the claims alleged herein arise from and relate to a Santa Cruz Port District project to perform dredging and sediment dewatering in the Santa Cruz Harbor, and a substantial portion of these events occurred in Santa Cruz, California, which is within the Northern District of California.

## GENERAL ALLEGATIONS

8.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs above as through fully set forth herein.

9.    Plaintiff is informed and believes and thereon alleges that in or about 2007 defendant GENESIS FLUID SOLUTIONS, LTD. ("GENESIS") entered into a contract with the Santa Cruz Port District to perform dredging and sediment dewatering in the Santa Cruz Harbor. The goal of the project was to remove 25,000 cubic yards of sediment. The project involved dredging, dewatering and transport upland of clean, fine-grained sediment.

10.    In or about July 2007, GENESIS contacted Plaintiff EAGLE NORTH AMERICA, INC. ("EAGLE") and inquired about renting or leasing from EAGLE equipment with which GENESIS could accomplish the dewatering scope of its contract with the Port District. GENESIS did not specify any production requirements, but specifically requested a

Lynch, Gilardi
& Grummer
475 Sansome Street
Suite 1800
San Francisco, CA
94111
Ph (415) 397-2800
Fax (415) 397-0937

2

**COMPLAINT FOR DAMAGES**

1   proposal for the cost to rent four self-contained belt presses.

2        11.    EAGLE provided the requested proposal on July 9, 2007. The proposal was for

3   Eagle to supply "(4) 2.0 meter Andritz S-8 Belt Presses – on self-contained skid." The rental

4   rate stated in the proposal was for $16,500.00 per belt press per month. (Attached hereto as

5   exhibit A and incorporated herein by this reference is a true and correct copy of the proposal.)

6        12.    Upon receiving the proposal, GENESIS, through its representative Lindsay Gall,

7   contacted EAGLE and stated that GENESIS needed "2.5 or 3.0 meter belt presses." Ms. Gall

8   did not mention any production requirements, but merely requested a revised proposal quoting

9   2.5 or 3.0 meter belt presses. EAGLE responded that it did not have that equipment available

10   for rental. GENESIS responded that the 2.0 meter belt presses "should be fine," and requested

11   a rental rate of $15,000.00 per belt press per month. (Attached hereto as exhibit B and

12   incorporated herein by this reference is a true and correct copy of emails between EAGLE and

13   GENESIS. )

14        13.    On or about August 7, 2007, EAGLE and GENESIS entered into an

15   EQUIPMENT LEASE AGREEMENT, wherein GENESIS agreed to rent from EAGLE "four

16   (4) used 2.0 SMX-S8 Belt presses," for $15,000.00 per belt press per month. This lease

17   agreement was executed on behalf of GENESIS by Michael Hodges. Mr. Hodges identified

18   himself as president and CEO of GENESIS, and EAGLE is informed and believes and thereon

19   alleges that Mr. Hodges had authority to bind GENESIS to the lease agreement. (Attached

20   hereto as exhibit C and incorporated herein by this reference is a true and correct copy of the

21   EQUIPMENT LEASE AGREEMENT.)

22        14.    Contemporaneously with the execution of the EQUIPMENT LEASE

23   AGREEMENT, Michael Hodges provided EAGLE with a signed, written personal guarantee of

24   payment to EAGLE of any and all obligations of GENESIS to EAGLE under the

25   EQUIPMENT LEASE AGREEMENT. (Attached hereto as exhibit D and incorporated herein

26   by this reference is a true and correct copy of the GUARANTY.)

27        15.    It was expressly understood that Michael Hodges providing the GUARANTY was

28   a condition precedent to EAGLE entering into the EQUIPMENT LEASE AGREEMENT with

Lynch, Gilardi
& Grassmer
475 Sansome Street
Suite 1800
San Francisco, CA
94111
Ph (415) 397-2800
Fax (415) 397-0937

**COMPLAINT FOR DAMAGES**

1    GENESIS.

2        16.    It was expressly understood between EAGLE and GENESIS that the belt presses

3    were going to be operated by GENESIS personnel. It was expressly understood between

4    EAGLE and GENESIS that EAGLE had not made any express or implied warranty about the

5    suitability of these presses for the use GENESIS intended, nor had EAGLE made any express

6    or implied warranty about the production capacities of the belt presses.

7        17.    EAGLE delivered the belt presses to GENESIS in Santa Cruz on or about August

8    13, 2007. The belt presses remained on site, and rent continued to accrue pursuant to the

9    EQUIPMENT LEASE AGREEMENT, until December 28, 2007.

10        18.    During the time that the belt presses were on site, GENESIS requested as a

11    modification to the EQUIPMENT LEASE AGREEMENT that EAGLE provide personnel to

12    assist with the operation of and to operate the belt presses. EAGLE did in fact provide such

13    personnel, at an agreed to rate of $600 per day daily rate plus costs.

14        19.    To date, EAGLE has invoiced GENESIS a total of $376,308.48 pursuant to the

15    EQUIPMENT LEASE AGREEMENT.

16        20.    To date, GENESIS has paid EAGLE a total of $224,205.00, leaving a balance of

17    $152,103.48 unpaid and owing.

18        21.    Demand has repeatedly been made for payment of the $152,103.48, but both

19    GENESIS and MICHAEL HODGES as guarantor refuse to pay EAGLE the balance owed.

20        22.    EAGLE commences this action to recover the unpaid balance due and owing to it,

21    and to recover all costs and expenses of suit, including reasonable attorney's fees, as provided

22    for in the EQUIPMENT LEASE AGREEMENT and in the GUARANTY.

23

24                    **FIRST CAUSE OF ACTION**

25                (**Breach of Contract - as to all defendants**)

26        23.    Plaintiff incorporates by reference the allegations contained in the preceding

27    paragraphs above as through fully set forth herein.

28        24.    As described above, EAGLE and GENESIS agreed to the terms of the contract

Lynch, Gilardi
& Grummer
475 Sansome Street
Suite 1800
San Francisco, CA
94111
Ph (415) 397-2800
Fax (415) 397-0937

4

**COMPLAINT FOR DAMAGES**

1 | embodied in the EQUIPMENT LEASE AGREEMENT.

2 |      25.    Notwithstanding that EAGLE fulfilled its obligations under the terms of the

3 | contract, GENESIS has failed and continues to fail to pay to EAGLE the monies due and owing

4 | to EAGLE under the Contract, to wit: $152,103.48.

5 |      26.    EAGLE has fully and fairly performed all of the covenants, conditions,

6 | obligations and requirements to be performed by it under the terms of the contract, except as

7 | may have been waived, prevented or excused by GENESIS, or under law.

8 |      27.    By refusing to pay EAGLE in accordance with the Contract, GENESIS breached

9 | its contractual obligations to EAGLE.

10 |      28.    As described above, Defendant HODGES agreed to the terms of the

11 | GUARANTY.

12 |      29.    Notwithstanding that EAGLE fulfilled its obligations under the terms of the

13 | contract, and that GENESIS has failed and continues to fail to pay to EAGLE the monies due

14 | and owing to EAGLE under the Contract, HODGES has refused and continues to refuse to pay

15 | to EAGLE the monies due and owing to EAGLE under the Contract, to wit: $152,103.48.

16 |      30.    There was implied in the EQUIPMENT LEASE AGREEMENT and in the

17 | GUARANTY by law a covenant by the Defendants that they would cooperate fairly and in

18 | good faith with EAGLE in the performance of the Contract and would restrain from any action

19 | that might deny EAGLE any of the benefits to which it was entitled by terms thereof.  In

20 | committing the breaches as alleged hereinabove, Defendants breached the covenant of good

21 | faith and fair dealing, which is implied in all contracts in the State of Georgia.

22 |      31.    As a direct and proximate result of the aforesaid breaches of the Contract by

23 | Defendants GENESIS and HODGES, Plaintiff EAGLE has suffered damages in the amount of

24 | $152,103.48, plus interest.

25 |     / / /

26 |     / / /

27

28

Lynch, Gilardi
& Grummer
475 Sansome Street
Suite 1800
San Francisco, CA
94111
Ph (415) 397-2800
Fax (415) 397-0937

5

**COMPLAINT FOR DAMAGES**

## SECOND CAUSE OF ACTION

### (Quantum Meruit – as to All Defendants)

32.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs above as through fully set forth herein.

33.    In the alternative to the breach of contract action, at the request and direction of Defendant GENESIS, and with the knowledge and consent of GENESIS and HODGES, Plaintiff EAGLE supplied belt presses and personnel necessary to perform work on the Santa Cruz Harbor Dredging Project with the full expectation of receiving reasonable and equitable compensation therefore.

34.    GENESIS and HODGES knew, accepted, and acquiesced to the provision of equipment and services provided by EAGLE that were necessary to perform work on the Project, which inured to the benefit of and conferred substantial advantage upon GENESIS.

35.    EAGLE is therefore entitled to recover in quantum meruit from GENESIS and HODGES for the reasonable value of the benefits conferred upon GENESIS and HODGES for which EAGLE has not received payment.

36.    The reasonable value of services and labor provided by EAGLE for the benefit of GENESIS and HODGES and for which EAGLE has not received payment is at least $152,103.48.

## THIRD CAUSE OF ACTION

### (Indebitatus Assumpsit against All Defendants)

37.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs above as through fully set forth herein.

38.    Within the last one (1) year GENESIS and HODGES became indebted to EAGLE in the agreed sum of approximately $152,103.48 for EAGLE supplying belt presses and personnel necessary to perform work on the Santa Cruz Harbor Dredging Project at the special request of GENESIS and HODGES.

39.    The above sum has not been paid notwithstanding demand by EAGLE therefore.

Lynch, Gilardi
& Grummer
475 Sansome Street
Suite 1800
San Francisco, CA
94111
Ph (415) 397-2800
Fax (415) 397-0937

**COMPLAINT FOR DAMAGES**

1   There is now due, owing and unpaid from GENESIS and HODGES the sum of approximately

2   $152,103.48, together with interest thereon at the maximum legal rate.

3        WHEREFORE, EAGLE prays for judgment against GENESIS and HODGES, and each or

4   all of them, as hereinafter set forth.

5

6                                    **PRAYER**

7        WHEREFORE plaintiffs pray for judgment as follows:

8

9                        <u>**ON THE FIRST CAUSE OF ACTION**</u>

10                       **(Breach of Contract - as to all defendants)**

11       1)      For damages in the amount of $152,103.48;

12       2)      For interest on the damages awarded in accordance with law;

13       3)      For costs of suit incurred herein;

14       4)      For attorney's fees as provided for in the contracts; and

15       5)      For such other and further relief as the Court deems just and proper.

16

17                       <u>**ON THE SECOND CAUSE OF ACTION**</u>

18                       **(Quantum Meruit – as to All Defendants)**

19       1)      For damages in the amount of $152,103.48;

20       2)      For interest on the damages awarded in accordance with law;

21       3)      For costs of suit incurred herein; and

22       4)      For such other and further relief as the Court deems just and proper.

23

24                       <u>**ON THE THIRD CAUSE OF ACTION**</u>

25                       **(Indebitatus Assumpsit against All Defendants)**

26       1)      For damages in the amount of $152,103.48;

27       2)      For interest on the damages awarded in accordance with law;

28       3)      For costs of suit incurred herein; and

Lynch, Gilardi
& Grummer
475 Sansome Street
Suite 1800
San Francisco, CA
94111
Ph (415) 397-2800
Fax (415) 397-0937

                                        7
                                                    **COMPLAINT FOR DAMAGES**

4)    For such other and further relief as the Court deems just and proper.

And on all causes of Action, for all such other relief as this Court may deem necessary and proper.

DATED:    April 21, 2008.

LYNCH, GILARDI & GRUMMER
A Professional Corporation

By _____
RANDEL J. CAMPBELL, ESQ.
LYNCH, GILARDI & GRUMMER
A Professional Corporation
475 Sansome Street, Suite 1800
San Francisco, CA 94111
RCampbell@lgglaw,.com
Telephone:    (415) 397-2800
Facsimile:    (415) 397-0937

Attorneys for EAGLE NORTH AMERICA, INC.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED:    April 21, 2008.

LYNCH, GILARDI & GRUMMER
A Professional Corporation

By _____
Randel J. Campbell, Esq.
Attorneys for EAGLE NORTH AMERICA, INC.

Lynch, Gilardi
& Grummer
475 Sansome Street
Suite 1800
San Francisco, CA
94111
Ph (415) 397-2800
Fax (415) 397-0937

\\SFDATA\CONVERSION\0495-0004\P\175192_2.DOC

8

**COMPLAINT FOR DAMAGES**

EXHIBIT 1



**EAGLE**

N O R T H   A M E R I C A
*Innovative Solutions for Residuals Management.*

July 9, 2007                         Sent via email: lgall@genesisfluidsolutions.com

Lindsay Gall
Genesis Fluid Solutions
6660 Delmonico Drive, Ste. 242-D
Colorado Springs, CO 80919

Subject: Temporary sludge dewatering

Dear Ms. Gall:

Thank you for your interest in Eagle North America, Inc. (Eagle) and the sludge dewatering services that we provide. Eagle provides our dredging and sludge dewatering services to facilities throughout the United States.

We are pleased submit the following proposal for providing temporary sludge dewatering equipment to Genesis Fluid Solutions:

**Scope of Work**

Eagle will provide sludge dewatering equipment to dewater harbor silt at a project in California.

To accomplish the Work, Eagle will supply the following:

- (4) 2.0 meter Andritz S-8 Belt Presses – on self-contained skid.



(2) 2.0 meter S-8 Andritz belt presses with 3 sided drop boxes (shown)

5105 Pierce Court  Augusta, Georgia 30809
(706) 860.7737 tel  (706) 210.8982 fax





**(1) 2.0 meter S-8 Andritz belt press with sludge pump, polymer mix tank, control panel and service water pump**

<u>Genesis Fluid Solutions to provide</u>

- Mobilization of belt presses
- Demobilization of belt presses
- Clear & Level staging area
- Cake disposal
- Filtrate disposal
- Crane Service (40,000 # capacity)
- Electric Power – 480 Volt, 3 Phase, 60 HZ, (1) 60 Amp
- Supply Wash Water – 100 gpm @ 60psi supplied to belt wash booster pump
- Polymer Dilution Water – depending on polymer demand (0 – 20 gpm)



July 5, 2007
Page 3 of 3

## Pricing Summary

Belt Press Rental – per day ................................................. $   1,200.00

Belt Press Rental – per week................................................$   5,000.00

Belt Press Rental – per month.............................................$  16,500.00

## Terms & Conditions

- Payment: Net 15 days
- Prices do not include any sales, use or other applicable taxes

Once again, thank you for the opportunity to provide this proposal to Genesis Fluid Solutions.

Please contact me at (706) 825-9546 or (706) 860-7737 x116 if you have any questions regarding this submittal.

Sincerely,

Dennis C. Allen
Vice President - Operations

**EXHIBIT B**

**Randel J. Campbell**

| | |
|---|---|
| **From:** | Lindsay Gall [lgall@genesisfluidsolutions.com] |
| **Sent:** | Tuesday, July 10, 2007 7:25 AM |
| **To:** | 'Dennis Allen' |
| **Subject:** | RE: Belt press quote |

2 meter belt presses should be fine. The first request and preference was for 2.5 or 3 meter, but we should be fine with 2 meter.

I would like to keep the price closer to $15,000/month. Is this something you can offer us?

Thanks again!

Lindsay Gall

**From:** Dennis Allen [mailto:dennis_allen@eaglenorthamerica.com]
**Sent:** Tuesday, July 10, 2007 6:00 AM
**To:** 'Lindsay Gall'
**Subject:** RE: Belt press quote

Unfortunately we do not have 2.5 to 3.0 meter belt presses. Why 2.5 to 3.0 unless a vendor got that spec'd into the project to preclude competition.

Dennis C. Allen
Vice President – Operations
office: (706) 860-7737
cell:    (706) 825-9546
email: dennis_allen@eaglenorthamerica.com

**From:** Lindsay Gall [mailto:lgall@genesisfluidsolutions.com]
**Sent:** Monday, July 09, 2007 7:44 PM
**To:** 'Dennis Allen'
**Subject:** RE: Belt press quote

Dennis…I would need 2.5 or 3.0 meter belt presses. Please resubmit the proposal with this guideline.

Regards,

Lindsay Gall

**From:** Dennis Allen [mailto:dennis_allen@eaglenorthamerica.com]
**Sent:** Monday, July 09, 2007 5:06 PM
**To:** lgall@genesisfluidsolutions.com
**Subject:** Belt press quote

Lindsay,

3/5/2008

Please find attached the proposal for (4) belt presses.

In reviewing our transportation costs I would use $4.00/mile for trucking of the belt presses.

Please contact me if you have any questions regarding this submittal.

Sincerely,

Dennis C. Allen
Vice President - Operations
office: (706) 860-7737 x116
cell:    (706) 825-9546
email: dennis_allen@eaglenorthamerica.com

3/5/2008

# EQUIPMENT LEASE AGREEMENT

THIS EQUIPMENT LEASE AGREEMENT (the "Lease") is made and entered into as of this 7th day of August , 2007, by and between EAGLE NORTH AMERICA, INC., a South Carolina corporation ("Lessor"), and Genesis Fluid Solutions, Ltd., a Colorado corporation ("Lessee").

1.    Lease.  Lessor hereby leases to Lessee, and Lessee hereby hires and takes from Lessor, four (4) used 2.0M SMX-S8 Belt Presses (the "Equipment").  The Equipment shall be shipped to Lessee at Lessee's project site located at Santa Cruz Small Craft Harbor, Santa Cruz, California F.O.B. Chico, TX; and Glenns Ferry, ID.

2.    Term.  The lease term shall commence on the date on which the Equipment is delivered to Lessee and shall continue through the date on which the Equipment is returned to Lessor in the same condition as when received by Lessee, reasonable wear and tear accepted.

3.    Rental.  Throughout the term hereof, Lessee shall pay to Lessor rental for the Equipment in the amount of $15,000.00 per belt press per month ($60,000.00 total per month, full of partial month), without defense, setoff, or deduction whatsoever; provided, however, that in no event shall the total rent payable to Lessor hereunder be less than $120,000.00 regardless of the length of the term.  If a press is returned to Lessor in unsatisfactory condition, rent will continue to be charged with respect to that press until such time as such press is repaired.  Monthly rent shall be paid in advance, with the first payment being due on the date on which the Equipment is delivered to Lessee and subsequent payments due on each monthly anniversary thereof.

4.    Security Deposit.  As a condition to the shipment of the Equipment, Lessee shall deposit with Lessor an amount equal to $7,500.00 per belt press ($30,000.00 total) as security for the full and complete satisfaction and performance of the duties and obligations of Lessee under this Agreement.  If Lessee fails to pay Lessor any amount when due or otherwise defaults under its obligations hereunder, Lessor may, in addition to any other remedy Lessor may have hereunder or at law or in equity, use, apply or retain all or any part of such deposit for the payment of any amount due or any other sum in default.  Lessor shall not be required to keep such deposit separate from its general funds and Lessee shall not be entitled to the payment of, or credit for, interest on such deposit.  If Lessee shall fully and completely satisfy and perform each and every of the duties and obligations of Lessee hereunder to and through the expiration of the term of this Lease, such deposit shall be refunded to Lessee within 10 days thereafter.

5.    Warranties; Inspection.  LESSOR MAKES NO EXPRESS OR IMPLIED WARRANTIES AS TO ANY MATTER WHATSOEVER, INCLUDING WITHOUT LIMITATION THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, OR ITS FITNESS FOR ANY PARTICULAR PURPOSE.  Lessee shall inspect the Equipment within 24 hours of delivery and shall notify Lessor of any damage or defects to such Equipment in writing within such 24 hour period.  Any defects or damage of which Lessee fails to notify Lessor within

1

US2000 10196841.1

such 24 hour period shall be waived by Lessee. Lessor may, at its option, repair any such damage or defects of which Lessee notifies Lessor within such 24 hour period or may remove such damaged or defective Equipment from this Lease, with a pro rata adjustment to the monthly rent. In the event that Lessor refuses to repair such damage or defect, Lessee may remove such damaged or defective Equipment from this Lease, with a pro rata adjustment to the monthly rent, or may accept such Equipment in which case Lessee shall have no further claim for such damage or defect. Except for any damage or defects of which Lessee so notifies Lessor as provided above, Lessee shall accept the Equipment in the condition or state delivered. Except as provided above, no defect or unfitness of the Equipment shall relieve Lessee of the obligation to pay rent or any other obligation under this Lease.

6.    <u>Manner of Use; Return of Equipment</u>. Lessee shall exercise due and proper care in the use, repair, and servicing of the Equipment and at all times and at its expense shall keep and maintain the Equipment in good working condition, order, and repair. Lessee agrees to employ only competent operators, and shall supply and pay for all operators used on the Equipment. Lessee also agrees to maintain the Equipment on its regular service schedule, including but not limited to grease, fluid and filter changes as required. It is understood that the monthly rental rate for each press contemplate the use of the press by Lessee upon a basis 24 hours per day and 7 days per week. Lessee shall make no alterations to the Equipment without the prior written consent of Lessor. Upon the expiration of this Lease, Lessee at its sole expense shall forthwith return the Equipment to Lessor at such place designated by Lessor, in the same condition as when received by Lessee, reasonable wear and tear accepted. All replacement parts, additions, and accessories incorporated in or affixed to the Equipment shall thereupon become the property of Lessor.

7.    <u>Repairs</u>. In the event that Lessee requests that Lessor repair any Equipment and Lessor agrees to do so, Lessee shall pay Lessor its regular rates for repair work and all repair work done outside of regular hours will be charged at the rate of time and one-half. Lessee is not authorized to incur for Lessor's account, any expense, or expend any money, in repairing said equipment, without written consent of the Lessor.

8.    <u>Limitation of Liability</u>. Lessor shall not be liable to Lessee or any other person whether in contract or in tort, or under any other legal theory, for (i) any loss, damage, or expense of any kind or nature, caused directly or indirectly by the Equipment or the use or maintenance thereof; (ii) the repair, servicing, or adjustment of the Equipment, or for any delay or failure to provide any thereof; (iii) any interruption of service or loss of use of the Equipment; (iv) for any loss of business or damage whatsoever and howsoever caused, or (v) lost profits or revenues, loss of use or similar economic loss, or for any indirect, special, incidental, consequential or similar damages arising out of or in connection with this Lease or the performance hereunder, even if Lessor has been advised of or might otherwise have anticipated or foreseen the possibility of such losses or damages.

9.    <u>Insurance</u>. Lessee shall, at its own expense, keep the Equipment insured against such risks, in an amount not less than $ 375,000.00 per unit and with such companies satisfactory to

2

Lessor. Said insurance shall provide for loss payments, if any, to be payable to Lessor. A certificates of such insurance shall be provided to Lessor before shipment of the Equipment. Such certificate shall provide that Lessor shall be notified at least 30 days in advance of cancellation, non-renewal or adverse change.

10.    Taxes. Lessee shall pay all taxes and assessments (and interest and penalties, if any, thereon) which may be levied, directly or indirectly, against Lessor, Lessee or the Equipment or any interest therein or with respect to the lease, possession, or use thereof by Lessee.

11.    Title. During the term hereof, title to the Equipment shall remain in Lessor. Lessee shall keep the Equipment free from any and all liens and encumbrances. Lessee shall give Lessor immediate notice of any attachment or other judicial process, liens, or encumbrances affecting the Equipment and shall indemnify and save Lessor harmless from any loss or damage caused thereby.

12.    Right of Inspection. Lessor and its representatives shall have the right at any time during normal business hours to inspect the Equipment and for that purpose shall have access to the location thereof.

13.    Default. Lessee shall be deemed to be in default hereunder if (i) Lessee fails to pay any rent or other amount herein provided within five (5) days after same has become due and payable, (ii) Lessee fails to observe, keep, or perform any other provision of this Lease required to be observed, kept, or performed by Lessee within ten (10) days after receipt of notice of such failure, (iii) a petition is filed by or against Lessee under the Bankruptcy Act or any amendment thereto, (iv) a receiver is appointed for Lessee or its property, (v) Lessee becomes insolvent, makes an assignment for the benefit of its creditors, or offers a composition or extension of any of its indebtedness, or (vi) Lessee, without Lessor's prior consent, sells, transfers, encumbers, assigns, sublets, or parts with the possession of the Equipment. Upon the occurrence of any such default, Lessor at its option, and without notice or demand, may declare this Lease in default and thereupon the Equipment and all rights of the Lessee herein shall be surrendered to Lessor and Lessor may take possession of the Equipment wherever found, with or without process of law, and for this purpose, may enter upon any premises of Lessee or wherever the same may be found, without liability therefore. The rights and remedies of Lessor in the event of default described herein shall not be deemed exclusive but shall be cumulative and in addition to all other rights and remedies existing by law.

14.    Assignments. Except with Lessor's prior written consent, (i) neither this Lease nor Lessee's rights hereunder shall be assignable by Lessee or (ii) none of the Equipment may be subleased to any other party or moved from the location to which it was delivered.

15.    Risk of Loss. Lessee hereby assumes and shall bear the entire risk of loss, theft, damage, and destruction of the Equipment from any cause whatsoever, and no loss, theft, damage, or destruction of the Equipment shall relieve Lessee of the obligation to pay rent or any other obligation of this Lease, and this Lease shall remain in full force and effect. In the event of damage of any kind whatsoever to any item of the Equipment (unless the same is damaged beyond repair), Lessee, at the

3

US2000 10196841.1

option of Lessor, shall at Lessee's expense (a) replace the same in good repair, condition, and working order, or (b) replace the same with like Equipment of the same or later model in good repair, condition, and working order. If the Equipment, or any item thereof, is determined by Lessor to be lost, stolen, destroyed, or damaged beyond repair, Lessee shall immediately pay Lessor therefor an amount equal to the aggregate amount of unpaid total rent for the balance of the term of this Lease, or the amount of the unpaid total rent allocated to the item or items involved, as the case may be, together with the termination value of the Equipment as determined by Lessor in any commercially reasonable manner. Upon such payment, this Lease shall terminate with respect to the Equipment or items thereof so paid for, and Lessee thereupon shall be entitled thereto to the Equipment, "as is", without warranty, express or implied, with respect to any matter whatsoever.

16.    Force Majeure.  Any delays in or failure of performance by Lessor shall not constitute a default hereunder if and to the extent such delay or failure of performance is caused by occurrences beyond the reasonable control of Lessor, including, but not limited to: acts of God or the public enemy; fire or other casualty; compliance with any order or request of any governmental authority; acts of war; riots or strikes or other concerted acts of personnel; network failures or failures in communications; or any other causes beyond the reasonable control of Lessor, whether or not of the same class or kind as those specifically named above.

17.    Indemnity.  Lessee hereby agrees to indemnify and hold Lessor harmless from, and defend Lessor against, any and all liabilities, claims, expenses, costs and losses (including reasonable attorney's fees) arising from (i) any breach by Lessee of any covenant, condition, representation or warranty provided in this Lease or (ii) any action by any third party against Lessor if Lessor is made a party to such action arising from, related to or in connection with this Lease or the use or operation of the Equipment by Lessee or Lessee's agents.  This indemnity obligation shall survive and remain operative regardless of the termination, amendment, modification or waiver of this Lease.

18.    Miscellaneous.  Lessor's failure at any time to require strict performance by Lessee of any of the provisions hereof shall not waive or diminish Lessor's right thereafter to demand strict compliance with any other provision.  Waiver of any default shall not waive any other default. Lessor's rights hereunder are cumulative and not alternative.  All notices relating hereto shall be hand delivered or sent by mail to Lessor or Lessee at their respective principal business addresses, or at any later address last known to the sender.  This Lease is irrevocable for the full term hereof and for the aggregate rent herein reserved, and the rent shall not abate by reason of termination of Lessee's right of possession and/or the taking of possession by Lessor or for any other reason.  This Agreement shall be interpreted and enforced under the laws of the State of Georgia.  If any provision hereof or any remedy provided for be invalid under any applicable law, such provision shall be inapplicable and deemed omitted, but the remaining provisions hereof shall be given effect in accordance with the manifest intent hereof.  This instrument constitutes the entire agreement between the parties with respect to the subject matter hereof and neither this Lease nor any provision hereof may be changed, waived, discharged, or terminated, except by a written instrument signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

US2000 10196841.1

4

IN WITNESS WHEREOF, the parties hereto have caused this Lease to be executed by their duly authorized representatives as of the date set forth above.

LESSOR:

EAGLE NORTH AMERICA, INC.

By _____

Its ___PRESIDENT/CEO_____

LESSEE:

GENESIS FLUID SOLUTIONS, LTD.

By _____

Its ___PRES/C.E.O._____

5

## GUARANTY

THIS GUARANTY is made as of the date set forth below by the undersigned (the undersigned, whether one or more, is referred to herein as the "Guarantor") in favor of EAGLE NORTH AMERICA, INC. ("Lessor").

WHEREAS, the Lessor has required, as a condition to entering into an Equipment Lease Agreement (the "Lease") with Genesis Fluid Solutions ("Lessee"), that the Guarantor guarantee the Obligations (as hereinafter defined) on the terms stated herein, Guarantor is an owner and/or officer of Lessee, and it is necessary for the business purposes of the Guarantor that Lessee enter into the Lease;

IN CONSIDERATION OF the foregoing and $10.00 in hand paid to Guarantor, the receipt and sufficiency of which are hereby acknowledged by the Guarantor, the Guarantor hereby agrees that:

1.      The Guarantor hereby (a) unconditionally guarantees the full and prompt payment and performance of all debts, obligations and liabilities of Lessee to Lessor, heretofore, now or hereafter made, incurred, or created, arising under or in connection with the Lease, whether or not any or all such debts, obligations and liabilities are or become barred by any statute of limitations or otherwise unenforceable (hereinafter collectively, the "Obligations"), when the Obligations are due, whether by acceleration or otherwise, or (if earlier) at the time the Lessee becomes the subject of bankruptcy or other insolvency proceedings; (b) agrees to pay all costs, expenses and reasonable attorneys' fees incurred by Lessor in enforcing this Guaranty and the Obligations; and (c) agrees to pay to the Lessor the amount of any payments made to Lessor or another in connection with any of the Obligations which are recovered from Lessor by a trustee, receiver, creditor or other party pursuant to applicable law.

2.      This is a guarantee of payment, and not of collection. The Lessor shall not be obligated to: (a) take any steps whatsoever to collect from, or to file any claim of any kind against, the Lessee for payment or performance of any of the Obligations; or (b) in any other respect exercise any diligence whatever in collecting or attempting to collect any of the Obligations by any means.

3.      The Guarantor's liability for payment and performance of the Obligations shall be absolute and unconditional; the Guarantor unconditionally and irrevocably waives each and every defense which, under principles of guarantee or suretyship law, would otherwise operate to impair or diminish such liability, and nothing whatever except actual full payment and performance to the Lessor of the Obligations (and all other debts, obligations and liabilities of Guarantor under this Agreement) shall operate to discharge the Guarantor's liability hereunder. Without limiting the generality of the foregoing, the Lessor shall have the exclusive right, which may be exercised from time to time without diminishing or impairing the liability of the Guarantor in any respect, and without notice of any kind to the Guarantor, to: (a) extend any additional credit to Lessee; (b) determine how, when and what application of payments, credits and collections if any, shall be made

US2000 10195841.1

on the Obligations and any other credit and accept partial payments; and (c) with or without consideration grant, permit or enter into any waiver, amendment, extension, modification, refinancing, indulgence, compromise, settlement, subordination, discharge or release of any of the Obligations and any agreement relating to any of the Obligations.

4.    The Guarantor hereby unconditionally waives (a) presentment, notice of dishonor, protest, demand for payment and all notices of any kind, including without limitation: notice of acceptance hereof; notice of the creation of any of the Obligations; notice of nonpayment, nonperformance or other default on any of the Obligations; and notice of any action taken to collect upon or enforce any of the Obligations; (b) any subrogation to the rights of the Lessor against the Lessee, any other claim against the Lessee which arises as a result of payments made by the Guarantor pursuant to this Agreement, and any other claim against the Lessee which arises as a result of payments made by Guarantor pursuant to this Agreement, and any claim for contribution against any co-guarantor (until the Obligations have been paid or performed in full and such payments are not subject to any right of recovery); and (c) any and all rights to compel the Lessor to commence collection of any or all of the Obligations from the Lessee, within a period of three months following notice from the Guarantor, pursuant to Section 10-7-24 of the Official Code of Georgia Annotated.

5.    This Agreement shall inure to the benefit of the Lessor and its successors and assigns, including every holder or owner of any of the Obligations, and shall be binding upon the Guarantor's heirs, personal representatives, successors and assigns. This is a continuing guarantee, shall not be revoked by death, and shall continue in effect until all Obligations and all obligations of Guarantor hereunder shall be paid or performed in full and such payments are not subject to any right of recovery. If there is more than one Guarantor, their liability thereunder shall be joint and several.

6.    This Agreement shall be governed by and construed in accordance with the internal laws of the State of Georgia.

IN WITNESS WHEREOF, the Guarantor has executed and delivered this Agreement under seal as of _AUGUST 7_____, 2007.

GUARANTOR:

_____ (L.S.)
MICHAEL HODGES, Individually
(Print Name)

COPY

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

EAGLE NORTH AMERICA, INC., a South Carolina corporation

E-FILING

## DEFENDANTS

GENESIS FLUID SOLUTIONS, LTD., a Colorado corporation; MICHAEL K. HODGES, an individual

**(b)** County of Residence of First Listed Plaintiff COLUMBIA, GA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

RANDEL J. CAMPBELL, ESQ. (SBN 209324)
LYNCH, GILARDI & GRUMMER, a Professional Corporation
475 Sansome Street, Suite 1800, San Francisco, CA 94
Telephone: (415) 397-2800

ADR

Attorneys (If Known)

C08 02060 PVT

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Security Act | ☐ 871 IRS—Third Party | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | ☐ 900 Appeal of Fee |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities— | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Determination |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | Under Equal Access |
| | ☐ 446 Amer. w/Disabilities— | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus— | | to Justice |
| | Other | | Alien Detainee | | ☐ 950 Constitutionality of |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | State Statutes |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | Transferred from | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1332 (Diversity)

Brief description of cause:
Non-payment on equipment lease related to Santa Cruz Port District dredging project

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 152,103.48

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☐ SAN FRANCISCO/OAKLAND    ☒ SAN JOSE

DATE
4-21-08

SIGNATURE OF ATTORNEY OF RECORD
Randel J Campbell